*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 13, 2015

<u>Via Facsimile ((212) 805-0426) and ECF</u>

The Honorable Laura Taylor Swain
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Chambers 1320
New York, NY 10007

      Re:   <u>United States</u> v. <u>Rahjohn Leary</u>, S3 13 Cr. 271 (LTS)

Dear Judge Swain:

      The Government respectfully submits this letter in connection with the sentencing of defendant Rahjohn Leary, a/k/a "Rajohn Leary," a/k/a "Raji" (the "defendant"), scheduled for November 19, 2015 before Your Honor, and in response to the defendant's sentencing submission dated November 10, 2015 ("Def. Mem."), which seeks a term of imprisonment of only 60 months (Def. Mem. 12-13).

      The defendant has a United States Sentencing Guidelines ("Guidelines") range of 97 to 121 months' imprisonment, as set forth in the United States Probation Office's ("Probation Office") Presentence Investigation Report ("PSR") dated October 1, 2015, in which the Probation Office recommends a sentence at the bottom of the Guidelines range. Although the Government has no objections to the PSR, we respectfully request that the Court impose a sentence at the high-end of the applicable Guidelines range, which more appropriately captures the defendant's repeated violent conduct in this gang-related narcotics offense.

## Background

      Since in or about early 2012, the Federal Bureau of Investigation ("FBI") Safe Streets Task Force (the "Task Force") has been investigating a criminal organization known as the "Bloods," operating in Passaic County, New Jersey, principally in the town of Paterson. The Bloods is a nationwide enterprise that is organized into subgroups, or "sets" (PSR ¶ 16). One of the most powerful sets operating in Paterson in recent years is the "Fruit Town Brims" (the

"Brims") set, which, in collaboration with other powerful Bloods sets, including the "9-3 Hillside Beehive" (the "9-3") set, and, significantly, with affiliated local neighborhood street gangs such as the "230 Boys" (the "230"), controls the drug markets in certain areas of Paterson, and protects its drug distribution territory with the use of force or violence, or the threat of violence (PSR ¶¶ 16, 18-22). The narcotics distributed in Paterson have been linked to sources of supply in upper Manhattan and the Bronx, New York (PSR ¶ 22).

On February 20, 2014, a ten-count sealed Superseding Indictment, captioned S3 13 Cr. 271 (LTS), was filed, charging the defendant and 27 other individuals in Count One with conspiracy to distribute and possess with the intent to distribute: (a) 1 kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of 21 U.S.C. § 841(b)(1)(A); (b) 280 grams and more of mixtures and substances containing a detectable amount of cocaine base, in a form commonly known as "crack," in violation of 21 U.S.C. § 841(b)(1)(A); and (c) 500 grams and more of mixtures and substances containing a detectable amount of cocaine, in violation of 21 U.S.C. § 841(b)(1)(B), from at least in or about February 2012, up to and including at least in or about February 2014, in violation of 21 U.S.C. § 846 (PSR ¶¶ 1-12). The defendant was charged only in Count One of the Superseding Indictment, which also set forth that the narcotics conspiracy was linked to Bloods membership and affiliation. An example of the defendant's narcotics distribution activities with other members of the conspiracy is listed in Overt Act (e) – *i.e.*, a confidential informant's controlled purchase of approximately ten "bricks" of heroin (totaling approximately 25 grams) at wholesale from the defendant and co-conspirator Alterrell Williams (a member of the Brims) on or about September 19, 2012, on Brims-controlled Twelfth Avenue in Paterson (PSR ¶ 27).

The defendant was arrested in a weekend sweep on Saturday, February 22, 2014 in Paterson, New Jersey, and was presented and arraigned on February 24, 2014 before Magistrate Judge Debra Freeman. The defendant waived his *Miranda* rights, and told law enforcement that he has been selling drugs since he was 18 years old, and was selling presently. The defendant was detained on consent without prejudice, and has remained detained.

On July 10, 2015, the defendant pled guilty, pursuant to a plea agreement, to the lesser-included offense of Count One of the Superseding Indictment – namely, conspiracy to distribute and possess with the intent to distribute mixtures and substances containing a detectable amount of heroin, from at least in or about February 2012, up to and including on or about the time of his arrest in connection with this case, in violation of 21 U.S.C. §§ 841(b)(1)(C) and 846 – before Your Honor (PSR ¶ 13). The plea agreement, dated June 22, 2015, contains a stipulated Guidelines Range of 97 to 121 months' imprisonment, and indicates that the parties agree that neither a downward departure nor an upward departure is warranted (PSR ¶ 13).

The PSR calculates the defendant's criminal history score to be 2 points, resulting in a Criminal History Category of II (PSR ¶¶ 86-87). The PSR calculates the defendant's offense level to be 29, which is adjusted to reflect the defendant's distribution of between 700 grams and one kilogram of heroin, his possession of a firearm, his use of violence, and his timely acceptance of responsibility (PSR ¶¶ 68-79). Based on an adjusted offense level of 29, and a Criminal History Category of II, the defendant's advisory Guidelines range is 97 to 121 months' imprisonment (PSR ¶ 119). This calculation is identical to stipulated Guidelines range contained

in the plea agreement (PSR ¶ 13). The defendant does not object to this calculation, but submits that a 37-month below-Guidelines variance is appropriate, to reflect his personal history and characteristics, including his youth and immaturity, his "genuine remorse," his "earnest attempts at rehabilitation," and the ongoing support of his family (Def. Mem. 12-13).

Discussion

A. Applicable Law

The Sentencing Guidelines still provide strong guidance to the Court following United States v. Booker, 543 U.S. 220 (2005), and United States v. Crosby, 397 F.3d 103 (2d Cir. 2005). Although Booker held that the Guidelines are no longer mandatory, it also held that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. at 264. As the Supreme Court has explained, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range;" that "should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007).

After that calculation, a sentencing court must consider the seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); the four legitimate purposes of sentencing, see id. § 3553(a)(2); "the kinds of sentences available," id. § 3553(a)(3); the Guidelines range itself, see id. § 3553(a)(4); any relevant policy statement by the Sentencing Commission, see id. § 3553(a)(5); "the need to avoid unwarranted sentence disparities among defendants," id. § 3553(a)(6); and "the need to provide restitution to any victims," id. § 3553(a)(7). See Gall, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2).

B. A High-End Guidelines Sentence Is Appropriate

The factors set forth in 18 U.S.C. § 3553(a) weigh in favor of a substantial sentence for this defendant – one that is at the top of his Guidelines range.

*First*, the nature and seriousness of the offense warrants such a sentence. See 18 U.S.C. §§ 3553(a)(1), (2)(A). Leary, who has been selling drugs in Paterson for at least his entire adult life, is a member of the 9-3 set of the Bloods, as well as one of the "230 Boys" (a local neighborhood street gang, which has been one of the "feeders" for the 9-3 set), and is a close associate of many of the Brims, who deals drugs with them and in areas controlled by the Bloods

(PSR ¶ 54).[1]  Specifically, Leary is a regular, daily, street-level dealer of wholesale (or "brick") quantities of heroin in Paterson's gang-controlled Fourth Ward.  Among the evidence against him in connection with this investigation were controlled purchases of heroin from the defendant, made and recorded by confidential informants at the direction of law enforcement, which occurred *after* the defendant had been released on bail conditions in June 2012, in connection with a pending murder charge (described further below).  Indeed, the defendant was not deterred from returning to selling hundreds of grams, to a kilogram, of heroin, in the short time between his release in mid-2012 and his arrest in early 2014 in connection with this case.

Moreover, despite his youth (he is only 22 years old), this defendant is among the more violent defendants charged in this case, and is known by cooperators and informants to regularly carry firearms in connection with his drug dealing, and for his protection in connection with territorial disputes between rival street gangs.  He himself has been responsible for starting a number of disputes between the street gangs in Paterson, which erupted into long-lasting neighborhood street wars and multiple back-and-forth shootings by the defendant and others.  For example, on or about August 16, 2013, on Twelfth Avenue and East 22nd Street, in Paterson, the defendant became engaged in a dispute with members of a rival street gang, called the "Brick Squad," and during the course of that dispute, shot a member of the Brick Squad named Kasim McCaskill, a/k/a "Kaka," striking McCaskill four times, including in the jaw and shoulder (PSR ¶ 54).  McCaskill survived, but required surgery.

*Second*, the history and characteristics of the defendant and the need for the sentence imposed to protect the public from further crimes warrant a substantial sentence.  See 18 U.S.C. §§ 3553(a)(1), (2)(C).  Although the defendant has scant criminal history, it is nevertheless strikingly violent history, evincing utter disregard for the lives of people of Paterson, and the law.  When the defendant was just 17 years old, on September 7, 2010, in the vicinity of 111 North Main Street/44 Arch Street, Paterson, he and another individual shot and killed an 18-year-old named Nyjavar Jackson, a/k/a "Waka," by shooting him multiple times in the torso (PSR ¶ 83).  This homicide was the result of an ongoing territorial feud between rival street gangs from the Fourth Ward (often referred to as "Up the Hill") – the defendant's area – and the North Side (often referred to as "Down the Hill").  The defendant is credited as being one of the people who sparked the feud, and who engaged in several related shootings, which quickly erupted into a violent street war that continues even to the present day.  On the day of Jackson's murder, witnesses saw the defendant riding his bicycle on North Main Street, and firing shots from his gun, striking Jackson over and over again.  The defendant was subsequently arrested and charged as an adult with this homicide.  He was released on bail conditions in June 2012.  Not only did he quickly return to selling heroin in the Fourth Ward – indeed, within mere months of his release, he was back to selling "brick" quantities of heroin with the Bloods – but also, in September 2013 he was arrested *again*, this time for possession of a loaded, defaced firearm (PSR ¶ 84).  That arrest, in turn, was only a few weeks *after* he had shot and wounded McCaskill, as described above.

---

[1]  The PSR indicates that the defendant is an associate of the 9-3 set.  However, the defendant admitted specifically to his membership in the 9-3 set in 2010, and requested to be housed with other positively-identified Bloods members during his prison term.

On April 1, 2015, the defendant pled guilty in Passaic County Superior Court, pursuant to the terms of a plea agreement with the Passaic County Prosecutors Office ("PCPO"), to one count of aggravated manslaughter, and one count of possessing a defaced firearm. He has not yet been sentenced for these crimes.[2]

The Government submits that the defendant's criminal history to date woefully understates his dangerousness and risk of recidivism. The defendant has continued to use and possess firearms, and to engage in shootings and significant drug distribution, notwithstanding his repeated arrests and the substantial charges that continued to stack up against him. Cooperators and sources credit him with being one of the primary orchestrators of the continued violence between two major areas of the city of Paterson – the Fourth Ward and the North Side. Rather than serving as a "wake up call," the defendant's arrests and his pretrial term of incarceration on the murder charge seem to have had little effect on his conduct – indeed, he shot someone four times *while released on bail from a murder charge* – and there is no reason to believe that anything would have stopped him. The public truly needs protection from this violent defendant.

---

[2] It is the Government's understanding that the defendant's plea agreement with the PCPO provides for an incarceratory term of five years' imprisonment on the manslaughter charge, to run concurrently with the defendant's sentence in this case, and 18 months' imprisonment on the defaced firearm charge, also to run concurrently. The Government did not participate in the plea discussions in these state matters, and is not a party to those plea agreements. This Court also is not bound by those agreements, and could choose to run the defendant's federal sentence consecutively to the not-yet-imposed state court sentences, see Setser v. United States, 132 S. Ct. 1463, 182 L. Ed. 2d 455 (2012) (holding that a federal court has discretion to impose a federal sentence to run consecutively to a yet-to-be imposed state sentence).

Given all of the foregoing, the Government respectfully requests that the Court impose a sentence at the high-end of the applicable Guidelines range, of 121 months' imprisonment. Such a sentence is sufficient but not greater than necessary to serve the legitimate purposes of sentencing, including and especially, to reflect the seriousness of the offense; promote respect for the law; afford adequate deterrence; and, most importantly, protect the public from further crimes of this defendant.

Respectfully submitted,

PREET BHARARA
United States Attorney

by: ____/s/_____
Justina L. Geraci
Assistant United States Attorney
(212) 637-2468

cc: Joyce C. London, Esq.
    A. James Bell, Esq.