

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 9, 2015

**BY ELECTRONIC MAIL**

The Honorable Laura Taylor Swain
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Chambers 1320
New York, NY 10007

      Re:   *United States* v. *Rahjohn Leary,* S3 13 Cr. 271 (LTS)

Dear Judge Swain:

      The Government writes in response to the defendant's letter, dated December 1, 2015, in which the defendant requests that the Court "correct the sentence" imposed upon him at his sentencing proceeding on November 19, 2015, pursuant to Federal Rule of Criminal Procedure 35. For the following reasons, the Court should deny the defendant's request.

**Background**

      On July 10, 2015, the defendant pled guilty, pursuant to a plea agreement, to the lesser-included offense of Count One of the Superseding Indictment – namely, conspiracy to distribute and possess with the intent to distribute mixtures and substances containing a detectable amount of heroin, from at least in or about February 2012, up to and including on or about the time of his arrest in connection with this case, in violation of 21 U.S.C. §§ 841(b)(1)(C) and 846 – before Your Honor. (PSR ¶ 13). The plea agreement, dated June 22, 2015, contained a stipulated Guidelines Range of 97 to 121 months' imprisonment, and indicated that the parties agreed that neither a downward departure nor an upward departure was warranted. (PSR ¶ 13). As part of the plea agreement, the defendant stipulated that his April 1, 2015 guilty pleas to separate offenses of aggravated manslaughter and buying, receiving, disposing of, or concealing a defaced firearm, in Passaic County Superior Court, New Jersey, each resulted in one criminal history point pursuant to U.S.S.G. §§ 4A1.1(c) and 4A1.2(a)(4), as he had not yet been sentenced for those offenses.

      In its sentencing submission, dated November 13, 2015, the Government described the defendant's "strikingly violent [criminal] history," including the defendant's involvement in the fatal shooting of Nyjavar Jackson on September 7, 2010, which formed the basis of the defendant's April 1, 2015 aggravated manslaughter plea in the Superior Court. The Government

The Honorable Laura Taylor Swain
December 9, 2015

briefly relayed the events leading up to the murder, and also observed that only weeks after being released on bail on these murder charges, the defendant engaged in significant drug trafficking, was arrested in possession of a loaded gun, and was arrested again for his involvement in the non-fatal shooting of Kasim McCaskill – a shooting which occurred during the course of the charged narcotics conspiracy, and which, in part, formed the basis for enhancements the defendant received under the Sentencing Guidelines.  Accordingly, the Government argued that the defendant's Criminal History Category drastically understated his dangerousness and risk of recidivism.  Notably, the Government did not argue that the Jackson murder was part of the narcotics conspiracy to which the defendant pled guilty.  Indeed, it was undisputed that the Jackson shooting occurring in 2010, two years before the beginning of the narcotics conspiracy to which the defendant pled guilty in this case.

Prior to Leary's sentencing proceeding on November 19, 2015, the Government provided the Court with a letter from Jackson's grandmother. (Sentencing Tr. 3).  As part of its argument at the sentencing proceeding, the Government urged the Court to be "skeptical of the defense . . . assertion that [the defendant was] not actually involved in [the Jackson] murder but simply pled guilty in order to resolve the case."  (Sentencing Tr. 16).  Moreover, the Government again observed that after being released on bail in connection with the Jackson murder, the defendant sold drugs, possessed a gun, and shot McCaskill four times, concluding that "his criminal history to date does not reflect his actual dangerousness."  (Sentencing Tr. 16).  Again, the Government did not argue that the Jackson murder was part of the narcotics conspiracy offense to which the defendant pled guilty.

In explaining its basis for its sentence, the Court, referring to the McCaskill shooting, noted that "[d]uring the commission of this offense, [the defendant] carried firearms and he was involved in a dispute with a rival gang in which he shot another individual."  (Sentencing Tr. 23).  Turning to the defendant's previous criminal history, the Court observed that the defendant had "pleaded guilty to aggravated manslaughter in connection with the 2010 incident and also to a 2013 charge of defacing a firearm . . . that was loaded with hollow-point bullets."  (Sentencing Tr. 24).  The Court stated that:  "Mr. Leary has a serious and violent criminal history that is understated to a degree by the criminal history section of the presentence report.  I noted that he was arrested for this offense while he was out on bail for the homicide and firearms offenses."  (Sentencing Tr. 26-27).  The Court ultimately sentenced the defendant principally to 109 months' imprisonment.  Notably, at no point in the proceeding did the Court state, or even imply, that it was sentencing the defendant in connection with his involvement with the Jackson murder.  Indeed, the Court specifically asked for an update on the status of the New Jersey murder case, and was informed that a sentencing date was set in that case for December 3, 2015.  (Sentencing Tr. 7).

By letter dated December 1, 2015, for the first time, the defendant objected to his sentence.  In the letter, the defendant argues that because the Government submitted a letter from Jackson's grandmother for the Court's consideration in sentencing the defendant, and because the Court "relied significantly on the conduct to which Mr. Leary pled guilty in [his] state cases," both the Government and the Court "deemed the New Jersey state cases to be relevant conduct in the instant offense." (Def. Ltr. at 2).  The defendant then goes on to argue that, as relevant

The Honorable Laura Taylor Swain
December 9, 2015

conduct, the two cases should not have resulted in the calculation of two criminal history points, resulting in a lower Criminal History Category of I (as opposed to II) and a lower advisory Guidelines range of 87-108 months (as opposed to 97-121 months).  (Def. Ltr. at 2).  The defendant further contends that the 22 months he spent in state custody on the aggravated manslaughter charge should be credited toward the defendant's federal sentence.  The defendant submits that the Court should therefore correct his sentence pursuant to Federal Rule of Criminal Procedure 35(a).

Several days later, at the defendant's state sentencing on December 3, 2015, a Passaic County Superior Court judge sentenced the defendant to five years' imprisonment in connection with his aggravated manslaughter conviction.  The state court judge ordered that the state sentence run concurrent to this Court's sentence of 109 months' imprisonment.[1]

## Discussion

### I. The Defendant's Motion Should Be Denied

The defendant's motion for correction of his sentence should be denied because: (1) he failed to make any objection to the Guidelines range calculated by the Court or to the sentence imposed on him, either prior to or at the time of sentencing; and (2) in any event, the Court did not err in imposing sentence on the defendant, and therefore no correction is warranted under Federal Rule of Criminal Procedure 35(a).

#### A. Legal Standard

Rule 35(a) of the Federal Rules of Criminal Procedure permits a court, within fourteen days after sentencing, to "correct a sentence that resulted from arithmetical, technical, or other clear error."  Fed R. Crim. P. 35(a).  The Second Circuit has instructed:

> [Rule 35(a)] is intended to be very narrow and to extend only to those cases in which an obvious error or mistake has occurred in the sentence, that is, errors which would almost certainly result in a remand of the case to the trial court . . . The subdivision is not intended to afford the court the opportunity to reconsider the application or interpretation of the sentencing guidelines or for the court simply to change its mind about the appropriateness of the sentence.  Nor should it be used to reopen issues previously resolved at the sentencing hearing through the exercise of the

---

[1] It bears noting that, had the defendant been sentenced to five years' imprisonment on the aggravated manslaughter charge *before* his federal sentencing, he would have received three criminal history points, rather than just one point, in connection with that conviction.  *See* U.S.S.G. § 4A1.1(a).

The Honorable Laura Taylor Swain
December 9, 2015

        court's discretion with regard to the application of the sentencing
        guidelines.

*United States v. Abreu-Cabrera*, 64 F.3d 67, 72 (2d Cir. 1995);[2] *see also United States v. Donoso*, 521 F.3d 144, 146 (2d Cir. 2008). Importantly, "the Committee did not intend that the rule relax any requirement that the parties state all objections to a sentence at or before the sentencing hearing." Fed. R. Crim. P. 35, Advisory Committee Notes.

    B.    <u>Analysis</u>

As a threshold matter, the defendant's request should be denied because he made no objection to the calculation of his Guidelines range or to the sentence imposed on him at the time of his sentencing. In fact, the defendant explicitly stated that he did not have any objection to the content of the PSR (Sentencing Tr. 4), which calculated one criminal history point each for the defendant's two prior New Jersey state convictions. *See* PSR ¶¶ 83-84. As indicated in the Advisory Committee Notes to Rule 35(a), "the Committee did not intend that the rule relax any requirement that the parties state all objections to a sentence at or before the sentencing hearing." Fed. R. Crim. P. 35, Advisory Committee Notes. The fact that the defendant submitted his letter to the District Court within days after the sentencing proceeding is of no consequence. The defendant made no objection before or during sentencing, and reconsideration of this issue is not appropriate under Rule 35(a). *See Abreu- Cabrera*, 64 F.3d at 69 ("a sentencing court is not authorized to change its mind as the winds change, veering away in a trice from a sentence it has correctly imposed, simply because further reflection has caused it to have a change of heart").

Even should the Court determine that the defendant's failure to object at the time of his sentencing does not bar further litigation of this issue under Rule 35(a), there is simply no error here to correct. The record does not in any way support the defendant's claim that either the Government or the Court "deemed the defendant's "New Jersey state cases to be relevant conduct in the instant offense." Indeed, the aggravated murder offense occurred in September 2010, well outside of the 2012-2014 narcotics conspiracy to which the defendant pled guilty. Neither the Government nor the Court indicated that the defendant was being sentenced in connection with his involvement in the Jackson murder or his possession of a defaced and loaded gun.[3] Quite the contrary, the Court's reasons for imposing its sentence made clear that it was sentencing the defendant for his involvement in the charged narcotics conspiracy and the related shooting of McCaskill, which occurred in the course of that conspiracy.

Instead, pursuant to Section 3553(a)(1), the Court properly weighed the defendant's prior convictions for crimes of violence, in determining an appropriate sentence for the instant federal

---

[2] As a result of 2002 amendments, paragraph (c) of Rule 35 became paragraph (a). *See* Fed. R. Crim. P. 35, Advisory Committee's Note, 2002.

[3] Moreover, had the Court considered the Jackson murder as relevant conduct to the instant offense, as the defendant claims, it would have had to address whether, pursuant to the cross-reference contained in U.S.S.G. § 2D1.1(d), the first or second degree murder Guideline, § 2A1.1 or § 2A1.2, applied in the defendant's case.

4

The Honorable Laura Taylor Swain
December 9, 2015

offense, as part of its obligation to consider the "history and characteristics of the defendant." The Government's submission of a letter from Jackson's grandmother provided additional context for the Court's consideration of those prior offenses. The Government's provision of the letter to the Court did not, as the defendant suggests, "deem the Jackson murder relevant conduct to the federal offense. Nor was the Court's consideration of the letter improper, particularly in light of Court's wide discretion under Title 18, U.S.C. § 3661, which provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing a particular sentence." In short, the Court correctly calculated criminal history points for the defendant's two prior state convictions, and properly considered the conduct underlying those cases as part of its Section 3553(a) analysis in finding the appropriate sentence for the defendant on the federal offense.

Finally, given that the state cases did not constitute relevant conduct to the defendant's federal offense, U.S.S.G. § 5G1.3(b)(1) does not apply, and the Court was, and is, under no obligation to credit the defendant for the 22 months he spent in New Jersey state custody on those cases prior to his federal arrest. *See* U.S.S.G. § 5G1.3(b)(1) (directing a court to "adjust [a defendant's] sentence for any period of imprisonment already served on [an] undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons," where the term of imprisonment "resulted from another offense *that is relevant conduct to the instant offense of conviction*") (emphasis added). In particular, neither the Jackson murder nor the defendant's defaced firearm possession offense formed the basis for an increase in the defendant's offense level for the instant federal conviction. Accordingly, U.S.S.G. § 5G1.3(b) is not applicable in this case. *See United States v. Juju Jiang*, 471 F. App'x 85, 85-86 (2d Cir. 2012).

## Conclusion

For the foregoing reasons, the defendant's motion for correction of his sentence pursuant to Federal Rule of Criminal Procedure 35(a) should be denied in all respects.

                                  Respectfully submitted,

                                  PREET BHARARA
                                United States Attorney

                        By: _____/s/_____
                                Christopher DiMase
                                Justina Geraci
                                Assistant United States Attorneys
                                (212) 637-2433 / 2468

cc:    Joyce London, Esq. (by electronic mail)
        A. James Bell, Esq. (by electronic mail)